[Cite as *State v. Crosby*, 2024-Ohio-2877.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230404 |
| | | TRIAL NOS. B-2103088 |
| Plaintiff-Appellee, | : | B-2105212 |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| RICHARD CROSBY, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Affirmed in Part and Appeal Dismissed in Part

Date of Judgment Entry on Appeal: July 31, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings* and *Andrew A. Berghausen*, Assistant Prosecuting Attorneys, for Plaintiff-Appellee,

*Arenstein & Gallagher* and *Elizabeth Conklin,* for Defendant-Appellant,

*Strauss Troy Co., LPA, William K. Flynn* and *Andrew D. White*, for Amicus Curiae Strauss Troy Co., LPA.

**CROUSE, Judge.**

{¶1}    Defendant-appellant Richard Crosby, while employed as an attorney at the law firm of amicus curiae Strauss Troy Co., LPA, ("Strauss Troy") failed to deposit funds received from the firm's clients into the firm's IOLTA account and stole the funds. When Crosby's actions were discovered, both Strauss Troy and the Lawyer's Fund for Client Protection ("the Lawyer's Fund") reimbursed several of the clients from whom Crosby had stolen. After Crosby pled guilty to multiple counts of theft, the trial court ordered him to pay restitution to Strauss Troy and the Lawyer's Fund in the amount of the reimbursement payments that they had made to the victims of the theft offenses.

{¶2}    Crosby now asks this court to hold that neither Strauss Troy nor the Lawyer's Fund were victims of his offenses or entities to whom restitution could be awarded. We disagree and hold that the trial court properly awarded restitution to Strauss Troy as a victim of Crosby's offenses and to the Lawyer's Fund as "another agency designated by the court" that, pursuant to R.C. 2929.18(A)(1), was entitled to be awarded restitution.

## I. Crosby Pleads Guilty and Restitution is Ordered

{¶3}    In the case numbered B-2103088, Crosby pled guilty to two counts of theft, both fourth-degree felonies in violation of R.C. 2913.02(A)(2).[1] The victims of these two offenses were Strauss Troy clients Loree Cardenas and Bianca Adkins. Strauss Troy reimbursed Cardenas $39,236.72 and reimbursed Adkins $10,000. Adkins also received $30,200 from the Lawyer's Fund. For these offenses, the trial

---

[1] In the case numbered B-2105212, Crosby pled guilty to two additional counts of theft. He advances no assignment of error with respect to his convictions in this case number on appeal, so that part of the appeal must be dismissed.

court sentenced Crosby to a five-year period of community control. Over Crosby's objection, the trial court ordered Crosby to pay $49,236.72 restitution to Strauss Troy and $30,200 restitution to the Lawyer's Fund.

{¶4}     Crosby now appeals.

## II. Award of Restitution

{¶5}     In a single assignment of error, Crosby argues that the trial court's award of restitution to Strauss Troy and the Lawyer's Fund in the case numbered B-2103088 was contrary to law. He contends that neither Strauss Troy nor the Lawyer's Fund was an entity eligible to receive restitution.

{¶6}     R.C. 2929.18 addresses the imposition of restitution in felony cases. It provides that the trial court may impose:

> Restitution by the offender to the victim of the offender's criminal offense or the victim's estate, in an amount based on the victim's economic loss. In open court, the court shall order that full restitution be made to the victim, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. At sentencing, the court shall determine the amount of restitution to be made by the offender.

R.C. 2929.18(A)(1). The plain language of the statute provides that restitution may be awarded to either the victim of the offense, the adult probation department, the clerk of courts, or another agency designated by the court. *Id.* Only the first and last categories—the victim and another agency designated by the court—are relevant to this appeal.

3

{¶7}     In determining whether a person or an entity qualifies as a victim, courts have applied the definition of victim set forth in Marsy's Law, Article I, Section 10a of the Ohio Constitution. *State v. Jones*, 2020-Ohio-81, ¶ 9-10 (1st Dist.). Marsy's Law provides that a victim is "a person against whom the criminal offense or delinquent act is committed or who is directly and proximately harmed by the commission of the offense or act." Ohio Const., art. I, § 10a(D). Harm will be considered a direct and proximate result of the offender's conduct when "the consequence is foreseeable and is produced by the natural and continuous sequence of events following the act." *State v. Yerkey*, 2022-Ohio-4298, ¶ 16. This court has described a direct result as one that would not have occurred "but for" the commission of the offense. *State v. Borger*, 2023-Ohio-1124, ¶ 19 (1st Dist.), quoting *State v. Lovelace*, 137 Ohio App.3d 206, 216 (1st Dist. 1999).

{¶8}     "The issue of who constitutes a 'victim' under R.C. 2929.18(A)(1) or to whom restitution may appropriately be awarded under the statute is a question of law that is reviewed de novo." *Jones* at ¶ 6. We separately address whether Strauss Troy and the Lawyer's Fund were entitled to restitution.

### A. Strauss Troy

{¶9}     Crosby argues that Strauss Troy is not entitled to restitution because the firm was not named as a victim in the indictment, the state proffered no evidence that Strauss Troy incurred an economic detriment as the direct and proximate result of Crosby's actions, and it is a third party that voluntarily paid the named victims the monies that they claimed to be owed. Crosby likens the actions of Strauss Troy to those of an insurance company and argues that the law firm should be required to pursue a civil action against Crosby for damages, rather than be awarded restitution.

4

{¶10} We disagree with Crosby's attempts to compare the actions of Strauss Troy to those of an insurance company. The Ohio Supreme Court has explained that an insurance company is not eligible to receive an award of restitution for an economic loss suffered after reimbursing an insured for a covered loss. *State v. Allen*, 2019-Ohio-4757, ¶ 11. When an insurance company makes such a payment, "it is merely fulfilling an obligation that it voluntarily took on to protect another against a loss. In such a case, it is hard to describe the insurer as a victim of a crime when it was not the target of the crime and when it was merely providing the service that it had agreed to perform in return for the payment of an insurance premium." *Id.*

{¶11} The *Allen* court distinguished the payment of restitution to a bank that recredited a depositor's account after cashing a forged check. It explained that unlike an insurance company, a bank is a victim in a forged-check case because "it is the bank that is defrauded and hence, it is the bank that is [the] object of the crime; it is the bank that suffers the economic loss; and, it is the bank that loses property in which it has an interest at the moment of the fraud." *Id.* at ¶ 12.

{¶12} Strauss Troy's reimbursement of Cardenas and Adkins is more akin to a bank crediting a depositor's account in a forged-check case than it is to an insurance company paying a covered loss. Unlike an insurance company, Strauss Troy was not contractually required to cover losses suffered by the firm's clients at the hands of an employee. Nor was it compensated for doing so, in contrast to an insurance company that had received a premium in return for coverage.

{¶13} Further, like the bank in the previously set forth scenario, Strauss Troy suffered an economic loss and was directly and proximately harmed by Crosby's actions. Crosby, as an employee of Strauss Troy, was required to put the clients'

retainer fees into the firm's IOLTA account. The clients were clients of the firm. As Crosby was its agent, Strauss Troy likely could have been held vicariously liable for his actions. *See Natl. Union Fire Ins. Co. v. Wuerth*, 2009-Ohio-3601, ¶ 25. But for Crosby's theft of the client's payments, the firm would not have needed to reimburse Cardenas and Adkins. *See Borger*, 2023-Ohio-1124, at ¶ 19 (1st Dist.). It was also reasonably foreseeable that Strauss Troy would reimburse the firm's clients, and such action by Strauss Troy was within the "natural and continuous sequence of events" that could be expected to follow Crosby's actions. *See Yerkey,* 2022-Ohio-4298, at ¶ 16.

{¶14}  Because Strauss Troy was directly and proximately harmed by Crosby's actions, the trial court did not err in awarding restitution to the firm as a victim of Crosby's offenses. *See* Ohio Const., art. I, § 10a(D).

### B.  The Lawyer's Fund

{¶15} Crosby argues that the Lawyer's Fund is not entitled to restitution because it does not qualify as a victim or "another agency designated by the court." We need not address Crosby's argument that the Lawyer's Fund was not a victim because we find that it was properly awarded restitution as "another agency designated by the court."

{¶16}  The Lawyer's Fund was established by Ohio Supreme Court Gov. Bar R. VIII. This rule provides in relevant part that:

> There shall be a Lawyers' Fund for Client Protection of the Supreme
> Court of Ohio consisting of amounts transferred to the fund pursuant to
> this rule and any other funds received in pursuance of the fund's
> objectives. The purpose of the fund is to aid in ameliorating the losses

6

caused to clients and others by defalcating members of the bar acting as attorney or fiduciary, and this rule shall be liberally construed to effectuate that purpose.

Gov.Bar R. VIII(1)(A).

{¶17} Crosby argues that the Lawyer's Fund does not qualify for restitution as "another agency designated by the court" because it was created by the Ohio Supreme Court and is not a governmental agency. However, the website of the Ohio Supreme Court, which established the fund, states that "[t]he Lawyers Fund for Client Protection is an *agency* of the Supreme Court." (Emphasis added.) Supreme Court of Ohio, *Lawyers' Fund for Client Protection*, https://www.supremecourt.ohio.gov/courts/advisory/boards/client-protection/ (accessed July 22, 2024) [https://perma.cc/8PTV-BJGE]. As the Supreme Court is a branch of the government, the Lawyer's Fund is a governmental agency.

{¶18} Crosby also argues that the Lawyer's Fund does not qualify for restitution as "another agency designated by the court" because R.C. 2743.72(E) only mentions the Attorney General's reparations fund, established by R.C. 2743.191, as being "an eligible recipient for payment of restitution." However, the fact that there is a provision in R.C. 2743.72(E) stating that the Attorney General's reparations fund is eligible to receive restitution payments does not mean that other reparations funds are not so eligible. R.C. 2743.72 only concerns the Attorney General's reparations fund and so logically would not mention the Lawyer's Fund, which is an agency of the Supreme Court of Ohio.

{¶19} In *State v. Bartholomew*, 2008-Ohio-4080, ¶ 12, the Supreme Court held that despite the specific language in R.C. 2743.72(E) making the Attorney

7

General's reparations fund eligible for restitution, "it is beyond cavil that the purpose of R.C. 2929.18(A)(1) is to require the offender to reimburse the victim—or whatever entity paid the victim—for the economic loss caused by the crime." Thus, the court found that the General Assembly intended the reparations fund to be an "agency designated by the court" under R.C. 2929.18(A)(1). *Id.* at ¶ 9.

{¶20} The Lawyer's Fund serves the same purpose as the Attorney General's reparations fund. The difference between the two funds is that the Attorney General's fund assists crime victims generally, while the Lawyer's Fund assists victims of an attorney's misconduct. Like the Attorney General's reparations fund, the Lawyer's Fund pays victims for economic loss caused by crime. It would be incongruous to allow restitution to the Attorney General's fund as "another agency designated by the court" and not the Lawyer's Fund.

{¶21} The plain language of R.C. 2929.18(A)(1) states that restitution may be made "to another agency designated by the court." We hold that the Lawyer's Fund is an agency and was properly awarded restitution.

{¶22} Crosby's assignment of error is accordingly overruled.

### III. Conclusion

{¶23} Having determined that the trial court did not err in awarding restitution to Strauss Troy or the Lawyer's Fund, we affirm its judgments in the case numbered B-2103088. The appeal is dismissed as it relates to the case numbered B-2105212.

Judgments affirmed in part and appeal dismissed in part.

**BERGERON, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.